[No. 26679. Department One. December 21, 1937.]

JERRY HARRINGTON, *Respondent*, v. W. E. ROCHE FRUIT COMPANY, *Appellant*.[1]

*J. P. Tonkoff*, for appellant.
*Sandvig & Walters*, for respondent.

GERAGHTY, J.—The plaintiff brought this action to recover the value of a quantity of apples sold to the defendant. The complaint states four causes of action, but only the first two will require any extended discussion.

In the first cause, it is alleged that the parties entered into an oral agreement by the terms of which the plaintiff was to sell, and the defendant buy, all of the Jonathan apples harvested by the plaintiff from his orchard in the year 1935, at $20 per ton, less culls and unmerchantable apples; that, pursuant to the agreement, the plaintiff delivered a quantity of merchantable apples, which, at the agreed price, was of the value of $809.58, no part of which was paid except the sum of $511.57, leaving a balance due the plaintiff of $298.01.

In the second cause of action, it is alleged that the parties agreed for the sale by plaintiff, and the purchase by defendant, of other varieties of apples grown

[1]Reported in 74 P. (2d) 194.

by the plaintiff in the year 1935, at the prices of $22.50 per ton for Delicious and $20 per ton for Winesap and Roman Beauty varieties; that there were delivered to the defendant quantities of Delicious, Winesap, and Roman Beauty apples, the value of which, at the agreed prices, after the deduction of the culls and unmerchantable apples, amounted to $1,228.88, no part of which was paid except the sum of $214.71, leaving a balance owing to the plaintiff of $1,014.17.

In its answer, and as an affirmative defense to the first cause of action, the defendant alleged that the marketable Jonathan apples delivered were of two grades, fancy and better and "C" grade; that the fancy and better were purchased from the plaintiff, at time of delivery, for $15 per ton, and, later, part of the "C" grade for $8.00 per ton; that there was no demand for the rest of the "C" grade apples, and it was necessary to dispose of them as culls.

That a custom exists that, when fruit delivered to commercial packing houses contains in excess of fifteen per cent culls, a charge is made against the growers of eight cents a box for washing and sorting, and an additional charge of one dollar per ton for handling in and out of the warehouse; and that the growers are required to pay these charges before removing the culls from the packing house, or, in the alternative, to leave them to cover the cost of washing and sorting; and that the fruit delivered to the defendant's warehouse contained in excess of thirty per cent culls; that the culls, as well as the "C" grade Jonathans not salable, were left by the plaintiff with the defendant, and were disposed of to pay the cost of washing and sorting.

In its answer to the second cause of action, the defendant alleged that it purchased the plaintiff's Delicious, Winesap, and Roman Beauty apples, after the deduction of culls, at prices set out in a statement ren-

dered to the plaintiff and attached to the answer as an exhibit. In this statement, credit is given the plaintiff on the basis of the number of boxes of different grades sold at what defendant claims to be the market prices, rather than on a per ton basis; and the plaintiff is charged for boxes, as well as for washing, sorting, and packing. The statement shows a charge was also made against the plaintiff for storage on 8,804 boxes of frozen Roman Beauty apples, at ten cents per box, as well as other charges for hauling the greater part of this fruit to the dump and some of it to an evaporator. These charges aggregate $1,139.34. As against this, the plaintiff is given credit for $296.12, realized from the sale of frozen fruit.

In a cross-complaint, the defendant asks judgment against the plaintiff for $380.71, alleged to be the balance due on account of advances made and supplies furnished the plaintiff in excess of the amount due him for the apples delivered to the defendant.

The plaintiff filed a reply, in which it is alleged, as to the charges made by the defendant on account of the storage of the frozen apples, that it was agreed by the parties that the plaintiff would deliver the fruit to the defendant, and, if it sold for a sum more than enough to pay for washing, handling, and other reasonable charges, the defendant would deduct the charges from the sum realized and remit the balance to plaintiff; and that, if enough to pay the charges was not realized, the defendant would make no additional charge for storage.

The case was tried to a jury, which returned a verdict in favor of plaintiff for $298.01 on the first cause of action and $1,014.17 on the second cause.

After the denial of a motion for a new trial, judgment in favor of the plaintiff was entered. The judgment, in addition to the amount of the verdict, em-

bodied the sum of $82.98, claimed by the plaintiff in a third cause of action, being the agreed value of a quantity of apple boxes admitted to have belonged to plaintiff, but retained by the defendant for credit on the alleged balance due it by the plaintiff.

The defendant appeals.

There is no controversy between the parties as to the existence of a contract for delivery of the apples, nor about the quality or quantity of fruit received at the warehouse. As stated by appellant in its brief, the issue between the parties narrows down to two points: First, the prices to be paid for the merchantable fruit delivered to appellant; and second, the basis on which the frozen Roman Beauty apples were delivered for storage.

The respondent's testimony, in substance, is to the following effect:

A definite oral agreement was made with the appellant for the sale of his merchantable Jonathan apples —the earliest variety harvested—at $20 a ton. It was agreed that his later varieties, Delicious, Winesap, and Roman Beauty, would be delivered to appellant for the market prices at time of delivery. Later, before commencement of the delivery, he informed the appellant that he had financial obligations which required that he know definitely what he was to get for his fruit, and appellant agreed on the prices of $22.50 a ton for Delicious and $20 a ton for the Winesap and Roman Beauty varieties, less culls and unmerchantable apples. Before delivery could be made to the packing house of the Roman Beauty apples, a large quantity of them was frozen in boxes in the orchard, and he informed the appellant of his doubt that these frozen apples could be restored, by thawing, to merchantable quality, and that it would not pay to store them. Appellant's manager thought a considerable quantity of

them could be saved and made an offer to take them into storage, depending for payment on the money realized when they were disposed of, and that if any sum was left over after paying the charges, it would go to the respondent. This offer was accepted.

On the other hand, Mr. Pat Roche, the appellant's manager, testified:

"Well, Mr. Harrington said he wanted us to handle this crop of apples grown on that ranch that year, and I told him I would be very glad to handle it, and I told him that we weren't interested in consignment business, that the only way we were interested was buying for cash, and that we would buy the crop and pay market prices for it, and I went on to tell him what the price of Jonathans was, I says, '$15.00 per ton,' and I stated I didn't know the price of Winesaps then, it was a little too early, but I assured him we would secure him the market price on all varieties delivered from that ranch that year, which was agreeable with Mr. Harrington. . . . 'Well,' he says, 'I suppose you fellows will do as good as anyone else.' I said, 'Well, if you feel that way, okeh, we will handle the crop and secure the market price.'"

With respect to the storage of the frozen Roman Beauty apples, Mr. Roche contradicted the respondent's version of the agreement. He testified that, at the respondent's request, his company hauled the frozen apples to cold storage, part of them being stored in the company's plant and part in another plant where the Roche Company had rented space; that the respondent agreed to a storage charge of ten cents per box, the regular customary charge being twelve cents.

On this conflicting testimony, the jury found for the respondent. The verdict was fully warranted, if the jury believed the respondent's version of the contract, as they must have done.

The appellant contends that there was a variance between the allegations of the second cause of

action and the testimony of respondent. The complaint alleged an agreement on the part of the appellant to purchase the apples at the market prices; the respondent's testimony, as we have seen, was to the effect that the market prices on the several varieties of apples were definitely agreed on at the commencement of delivery. Furthermore, the court granted respondent's motion, made before the case was submitted to the jury, for amendment of the complaint to conform to the evidence.

The judgment is affirmed.

STEINERT, C. J., MAIN, HOLCOMB, and SIMPSON, JJ., concur.